UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK MARAULO, et al.,

        Plaintiffs,

                                     Civil Action No. 12-CV-10250

vs.                                 HON. MARK A. GOLDSMITH

CITIMORTGAGE, INC., et al.,

        Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (DKT. 11)

### I.     Introduction

This is a case alleging wrongful mortgage foreclosure. Plaintiffs Frank Maraulo and Kimberly Maraulo filed a complaint (Dkt. 9) challenging the validity of various elements of foreclosure proceedings commenced by Defendant CitiMortgage, Inc. ("CitiMortgage").[1] Defendants filed a motion to dismiss (Dkt. 11) and the motion was fully briefed. For the reasons set out below, the Court will grant Defendants' motion with regard to Counts 1, 3, 4, 5, 6, 7, and 8 of the complaint, and will deny Defendants' motion with regard to Count 2 of the complaint.

### II.     Background

Plaintiffs are a married couple who reside at the real property at issue in this action, located in Livonia, County of Wayne, Michigan. Compl. ¶ 1 (Dkt. 9). On April 23, 2003, a

---

[1] Plaintiffs are bringing this suit against two Defendants: (i) CitiMortgage, and (ii) "Unknown Trustee," the trustee on behalf of the asset-backed security in which the Mortgage at issue was pooled.

mortgage and note were executed by and between Plaintiffs and American Equity Mortgage ("American"), and the mortgage was recorded in Wayne County Records.  Id. ¶ 8.  The total amount owed listed on the mortgage is $180,000.  Mortgage at 3 of 20 (CMECF pagination), Ex. 1 to Def. Mot. (DKt. 11-2).  Defendant CitiMortgage began sending monthly billing statements to Plaintiffs immediately after the execution of the mortgage.  Id. at ¶ 9.  In October 2003, a document entitled "Assignment of Mortgage" was issued purporting to assign American's interest in the mortgage to CitiFinancial Mortgage Company, Inc ("CitiFinancial").  Id. ¶ 10; Ex. 4 to Def. Mot (Dkt. 11-5).  In 2005, CitiFinancial merged with CitiMortgage, and CitiMortgage was the surviving party to the merger.  Certificate of Merger, Ex. 5 to Def. Mot. (Dkt. 11-6).  American went out of business in approximately 2008.  Compl. ¶ 16.  After executing the mortgage, American or CitiMortgage pooled the mortgage into an asset-backed-security.  Id. ¶ 18.

In 2009, Plaintiffs began experiencing economic hardship and contacted CitiMortgage requesting assistance with loan modification.  Id. ¶ 23.  In August 2011, CitiMortgage published a notice of foreclosure and commenced foreclosure proceedings against Plaintiffs.  Id. ¶ 25. After foreclosure proceedings commenced, Plaintiffs participated in the Michigan statutory modification process, and worked with Citimortgage and Orlans Associates, P.C., which Citimortgage designated as its agent.  Id. ¶¶ 26, 27; Ex. 5 to Pl. Resp. (Dkt. 15-1).  Plaintiffs' request for a loan modification was denied.  Compl. ¶ 32.  On January 11, 2012, Plaintiffs filed a complaint in Wayne County Circuit Court.  Ex. 1 to Notice of Removal (Dkt. 1-2).  On January 19, 2012, Defendants removed the case to this Court.  On April 18, 2012, Plaintiffs filed an amended complaint (Dkt. 9) which alleged the following numbered claims:

- Count 1 – NO PROOF OF OWNERSHIP OF LOAN/AUTHORITY TO FORECLOSE. Amended Compl. ¶¶ 41-61. (Dkt. 9).  Plaintiffs contend that the purported assignment of

the Mortgage from American Equity Mortgage, Inc., to CitiFinancial Mortgage Company, Inc., was invalid because the Assignment of Mortgage document was a forgery, id. ¶¶ 45-46.   Plaintiffs also claim that regarding the foreclosing entity, CitiMortgage, that there was "no proof in the chain of title" of any such assignment of the mortgage to CitiMortgage, id. ¶ 44.   Plaintiffs also claim that CitiMortgage sold its interest to Unknown Trustee (the trustee of the asset-backed security into which the Mortgage was pooled) and only Unknown Trustee has the authority to foreclose, although it must first receive a valid assignment before it forecloses. Id. ¶ 55. Therefore, Plaintiffs claim that the foreclosure violated Mich. Comp. L. § 600.3204(3), requiring a record chain of title for any assignments of a mortgage to the party foreclosing the mortgage. Id. ¶ 44.

- Count 2 – MI FORECLOSURE BY ADVERTISEMENT STATUTE. Id. ¶¶ 62-70. Plaintiffs claim that they qualified for various loan modification programs in which Defendants participate.   Id. ¶ 66.   Plaintiffs contend that under Mich. Comp. L. § 600.3204(4)(f) and Mich. Comp. L. § 600.3205c(7), because Plaintiffs qualified for loan modification and Defendants refused to grant such modification, Defendants may not commence foreclosure by advertisement. Id. ¶¶ 64-67. Plaintiffs contend that that when a foreclosing entity refuses to grant modification despite the mortgagor qualifying for such modification, the foreclosing entity is limited to filing for judicial foreclosure. Id. ¶ 67.   In the alternative to the temporary restraining order and damages sought by Plaintiffs, Plaintiffs also seek to convert the instant action to a judicial foreclosure. Id. ¶ 70.

- Count 3 – MI STATUTORY MODIFICATION LAW. Id. ¶¶ 71-87. Plaintiffs claim that Defendants, in violation of Mich. Comp. L. § 600.3205a(1)(c), failed to designate any person authorized to enter into loan modification agreements. Id. ¶¶ 73-75. Plaintiffs claim that the only representatives of Defendants who participated in modification meetings were representatives of the foreclosing law firm and representatives of the servicing agent, none of whom had the authority to modify the borrower's loan. Id. ¶¶ 79-80. Plaintiffs contend that the only party with authority to modify the loan – the loan investor (referred to by Plaintiffs as "Unknown Trustee") – was not present for the meetings. Id. ¶ 74.

- Count 4 – DECLARATORY RELIEF – FORECLOSURE BARRED BY UNCLEAN HANDS. Id. ¶¶ 88 – 92. Plaintiffs contend that although Defendants seek the equitable relief of a foreclosure, Defendants are barred from doing so because they cannot make a showing of clean hands. Id. ¶ 91.

- Count 5 – BREACH OF CONTRACT – IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING. Id. ¶¶ 93 – 97. Plaintiffs claim that Defendants owed Plaintiffs a duty of good faith and fair dealing because Defendants had the discretion to modify Plaintiffs' loan.   Id. ¶ 94-95.   Plaintiffs contend that Defendants' conduct constitutes multiple breaches of its duty of good faith and fair dealing. Id. ¶ 96.

3

- Count 6 – FEDERAL FAIR DEBT COLLECTION PRACTICES ACT.  Id. ¶¶ 98 – 102.
  Plaintiffs claim that Defendant CitiMortgage was acting as a debt collector under the
  meaning of the Fair Debt Collection Practices Act because, since there never was a valid
  assignment of the Mortgage to CitiMortgage, it was not attempting to collect on its own
  debt.   Id. ¶ 99.   Plaintiffs claim that Defendants violated the Fair Debt Collection
  Practices Act by: (i) failing to give validation notice; (ii) making misrepresentations
  about the terms of the alleged debt; (iii) making a false threat to initiate legal action; and
  (iv) communicating with Plaintiffs after being notified Plaintiffs had engaged counsel.
  Id. ¶ 101.

- Count 7 – MI FAIR DEBT COLLECTION PRACTICES ACT.  Id. ¶¶ 103 – 106.
  Plaintiffs claim that Defendants violated the Michigan Occupation Code for (i) failing to
  give required validation notice; (ii) making a false threat to initiate legal action; and (iii)
  communicating with Plaintiffs after being notified Plaintiffs had engaged counsel.  Id. ¶
  105.

- Count 8 – ACCOUNTING.  Id. ¶¶ 107-110.  Plaintiffs claim that Defendants owe
  Plaintiffs the obligation to account for all payments made by Plaintiffs because
  Defendants accepted payments from Plaintiffs while still conducting foreclosure
  proceedings against them.  Id. ¶¶ 108-109.

On June 13, 2012, Defendants filed the present motion to dismiss (Dkt. 11).

### III.   Analysis

#### A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for

"failure to state a claim upon which relief can be granted."  The Supreme Court has stated,

"While legal conclusions can provide the framework of a complaint, they must be supported by

factual allegations.  When there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  Therefore, to survive a motion to dismiss: (i) the

complaint must plead sufficient specific factual allegations, and not just legal conclusions, in

support of each claim, id. at 678-679; and (ii) if all well-pled factual allegations are accepted as

true, the complaint must state a "plausible claim for relief," id. at 679.  In ruling on a motion to

dismiss, a court may consider the entire complaint, documents incorporated by reference in the complaint and central to the claims, and matters on which a court may take judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 55l U.S. 308, 322 (2007).  Materials on which a court may take judicial notice include public records.  New England Health Care Emps. Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003) (abrogated on other grounds by Merck & Co, Inc. v. Reynolds, 130 S. Ct. 1784 (2010) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.")

### B. Ripeness

Defendants argue that to the extent Plaintiffs' claims challenge the foreclosure sale, these claims are not ripe because they challenge the validity of a sheriff's sale that has not yet occurred.  Def. Br. at 3 n.6 (Dkt. 11).  Defendants cite Kallstrom v. City of Columbus, 136 F.3d 1055, 1068 (6th Cir. 1998) ("Under the ripeness doctrine, a matter is considered premature for judicial review when the alleged injury is speculative or may never occur").  However, as Plaintiffs point out (Pl. Resp. at 8 n.3 (Dkt. 15)), in the context of foreclosures, the sheriff's sale is not necessarily speculative or uncertain once foreclosure proceedings are underway.  See Langley v. Chase Home Fin., LLC, No. 1:10-cv-604, 2011 WL 1130926, at *2 (W.D. Mich. Mar. 28, 2011):

> It may be that no forced sale has yet occurred, but that is hardly the test for ripeness to challenge the foreclosure process.  Everyone agrees that the foreclosure process has been initiated, and this is enough to trigger a Plaintiff's right to object.  Indeed, in some contexts, the Michigan foreclosure statute expressly authorizes actions to enjoin a foreclosure process, such as this one, that is underway but not yet complete.  See, e.g. Mich. Comp. Laws Ann. § 600.3205a(5) (authorizing actions to enjoin foreclosure in certain home mortgage cases).  Of course, Plaintiff would need to persuade a Court on the merits that some kind of emergent relief was appropriate. But plainly ripeness is not a problem.

5

See also  Nikiforuk v. CitiMortgage, Inc., 2011 WL 7113469, at *5 (E.D. Mich. 2011) (noting that when Plaintiffs did not allege that CitiMortgage had foreclosed on their home, initiated foreclosure proceedings, or threatened foreclosure, and when Plaintiffs did not otherwise state a cognizable claim against CitiMortgage, Plaintiffs' claims on the foreclosure issue were not ripe for adjudication).

Pursuant to Langley, which this Court finds persuasive, the Court declines to hold that Plaintiffs' claims challenging the validity of the foreclosure sale are not ripe.

### C.  Challenges to Assignments of the Mortgage

Plaintiffs are bringing two claims challenging the validity of the foreclosure proceedings based on invalid assignments: (i) that there is no proof in the chain of title to the mortgage of any assignment of the mortgage to the foreclosing entity, CitiMortgage, in violation of Mich. Comp. L. § 600.3204(3), Compl. ¶ 44 (Dkt. 9); and (ii) that the purported assignment of the mortgage from American to CitiFinancial was invalid because it was produced by fraudulent means. Compl. ¶ 46.  In response to this first claim, Defendants contend that CitiMortgage validly became the mortgagee of record after merging with CitiFinancial.  Def. Br. at 4 (Dkt. 11).  In response to the second claim, Defendants contend that CitiMortgage, as servicer of the mortgage, has the right to foreclose on the mortgage regardless of any other interest in the mortgage.  Id. at 6.  Finally, Defendants argue that Plaintiffs' claims regarding the assignment from American to CitiFinancial fail because Plaintiffs do not have standing to challenge those claims.

### 1.  CitiMortgage's Merger with CitiFinancial

In 2006, CitiFinancial and CitiMortgage merged.  Certificate of Merger, Ex. 5 to Def. Mot. (Dkt. 11-6).  Plaintiffs do not seem to challenge the argument that in the merger of

CitiFinancial and CitiMortgage, CitiMortgage acquired any interests CitiFinancial possessed in the Mortgage. See Pl. Resp. at 12 n. 7 (Dkt. 15).

Regardless, it is well settled that under both New York[2] and Michigan law, the surviving entity of a merger acquires all "rights, privileges, immunities, powers" and all "property, real and personal . . . without further act or deed." NY Business Corporations § 906(b)(1), (2) (2003). See also American Cement Corp v. Dunetz Bros, Inc., 47 Misc. 2d 747, 750-51, 263 N.Y.S.2d 119 (N.Y. Sup. Ct. 1965) (holding that a lien assignment was not required after a merger); Winiemko v. GE Capital Mortgage Serv., Inc., No. 177827, 1997 WL 33354482, at *2 (Mich. Ct. App. Jan. 17, 1997) (no assignment from the merging entity into the surviving entity is required for purposes of complying with Mich. Comp. L. § 600.3204(3)). Therefore, the Court concludes that the merger of CitiFinancial and CitiMortgage effectuated the transfer of any interest in the mortgage from the former party to the latter.

**2. CitiMortgage's Right to Foreclose as Servicer**

In their complaint, Plaintiffs allege that "Unknown Trustee" is the "trustee for the asset-backed security into which the mortgage at issue was, upon information and belief, pooled and sold by CitiMortgage or American Equity Mortgage, Inc." Compl. ¶ 3 (Dkt. 9). Plaintiffs also claim that there was never an assignment recorded from CitiMortgage to Unknown Trustee or any other third party. Id. ¶ 20. In Count I, Plaintiffs claim that because American or CitiMortgage sold its interest in the mortgage and note to Unknown Trustee, it is Unknown Trustee and not CitiMortgage who has the authority to foreclose; however, Plaintiffs allege,

---

[2] Because the CitiMortgage merger documents were filed with the New York Department of State, Ex. 5 to Def. Mot. (Dkt. 11-6), New York law governs the merger. See U.S. v. Hilton Hotels Corp., 397 U.S. 580, 582-583 (1970) (applying New York law to a merger for which the merger agreement and certificate of consolidation were filed with the Secretary of State of New York). No party contends otherwise.

Unknown Trustee must first obtain a valid assignment of the mortgage from CitiMortgage before it may foreclose.  Id. ¶ 55.

Defendants argue that Plaintiff's contentions regarding the lack of an assignment from CitiMortgage to an Unknown Trustee fail because, under Michigan law, a servicer may foreclose without an ownership interest.  Def. Br. at 6 (Dkt. 11).  Plaintiffs do not respond to this argument.

Mich. Comp. L. § 600.3204(1)(d) states that the party foreclosing a mortgage must be "either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage."  (emphasis added).  Loan servicing is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan."  Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617.

The mortgage in this case defines the "Loan Servicer" as the entity "that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations".  Mortgage at ¶ 20, Ex. 1 to Mot. (Dkt. 11-2).  The mortgage also provides for changes in the loan servicer related or unrelated to the sale of the note, about which the mortgagor will be informed via written notice of the change and the address to which new payments should be sent.  Id.

Plaintiffs' complaint states that "[a]lmost immediately after execution of the Mortgage, CitiMortgage, purporting to act as servicer for the Mortgage loan ('the Loan'), began sending monthly billing statements to Plaintiffs . . . ." Compl. ¶ 9 (Dkt. 9).  Accepting the facts on the record as true, CitiMortgage serviced the mortgage.  Therefore, under Mich. Comp. L. § 600.3204(1)(d), CitiMortgage had the right to foreclose the mortgage regardless of any ownership interest, or lack thereof, it possessed in the loan.

8

### 3.  Standing

In the complaint, Plaintiffs also challenge the validity of the foreclosure by contending that the assignment from American to CitiFinancial was invalid and, therefore, there is no record chain of title to the mortgage as required by Mich. Comp. L. § 600.3204(3).  Compl. ¶¶ 44, 46 (Dkt. 9).  Plaintiffs argue that this assignment was invalid because it was forged by either "M.E. Wileman" or "S.E. Wileman," fictitious employees of Orion Financial Group (which Plaintiffs claim to be a robo-signer), and this assignment was therefore prepared by fraud because it was not signed by an employee or agent of American.  Id. ¶ 14 (Dkt. 9).  In their response brief, Plaintiffs also argue that because the Assignment was signed by an attorney-in-fact, the assignment was invalid because it does not reference any recorded power of attorney.  Pl. Resp. at 13 (Dkt. 15).

Defendants argue that Plaintiffs lack standing to challenge this assignment, citing Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC, 717 F. Supp. 2d 724, 737 (E.D. Mich. 2010) (aff'd Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Road Holdings, 399 F. App'x 97 (6th Cir. 2010)), for the proposition that a borrower "may not challenge the validity of assignments to which it was not a party of third-party beneficiary, where it has not been prejudiced, and the parties to the assignments do not dispute (and in fact affirm) their validity."  Def. Br. at 7-8 (Dkt. 11).  Defendants contend that Plaintiffs were not a party to the assignment from American Equity to CitiFinancial and therefore lack standing to challenge its validity.  Id. at 9.

Plaintiffs argue that because they have a special injury or right, or a substantial interest that would be detrimentally affected, they have standing to challenge the assignment.  Pl. Resp. at 8 (Dkt. 15).  Plaintiffs cite Lansing Schs. Educ. Ass'n v. Lansing Bd. of Educ., 487 Mich. 349, 365 (Mich. 2010) for this proposition. Plaintiffs also cite a number of other Michigan cases

which, they argue, establish that mortgagors or borrowers have standing to challenge assignments of mortgages.  Pl. Resp. at 9-11.  Defendants, in turn, contend that the cases cited by Plaintiffs are distinguishable, Def. Rep. at 1-2 (Dkt. 16), and argue that under <u>Livonia Property</u>, Plaintiffs may not challenge the assignment of a mortgage here.  <u>Id.</u> at 1.

The Court concludes that under the Sixth Circuit's opinion in <u>Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Road Holdings</u>, 399 F. App'x 97 (6th Cir. 2010), Plaintiffs do not have standing to challenge the mortgage assignment on the grounds of fraud.  Because the Court concludes that Plaintiffs do not have standing to challenge the assignment, the Court does not reach the merits of the parties' arguments regarding the validity or invalidity of the assignment.

The <u>Livonia Property</u> court stated:

As a preliminary matter, Livonia has presented no authority for the proposition that the record chain of title is destroyed by an irregularity affecting the validity of a transfer. Even if the transfer were invalidated, the public record would remain as it is, and the record chain of title would not be disturbed.
. . . .
[E]ven if there were a flaw in the assignment, Livonia does not have standing to raise that flaw to challenge Farmington's chain of title. As recognized by the district court, there is ample authority to support the proposition that "a litigant who is not a party to an assignment lacks standing to challenge that assignment." 717 F.Supp.2d at 736–37. An obligor "may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void." 6A C.J.S. Assignments § 132 (2010). These defenses include nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment, none of which are available in the current matter. Id. Obligors have standing to raise these claims because they cannot otherwise protect themselves from having to pay the same debt twice. <u>Id.</u> In this case, Livonia is not at risk of paying the debt twice, because Farmington has established that it holds the original note. Farmington has produced ample documentation that it was in possession of the note and had been assigned all rights therein prior to the initiation of foreclosure proceedings. The district court reviewed the copies in exhibits and the originals produced by Farmington and was satisfied that they were authentic. Without a genuine claim that Farmington is not the rightful owner of the loan and that Livonia might therefore be subject to double liability on its debt, Livonia cannot credibly claim to have standing to challenge the First Assignment.

. . . .

Livonia has attempted to distinguish itself from the unsuccessful obligors described above by emphasizing that its challenge of the First Assignment is not meant to "challenge the underlying obligation," but rather to challenge the record chain of title. That is, Livonia contends that a defective assignment corrupts the record chain of title and that Livonia's challenge is only of Farmington's standing to foreclose under the statute. Livonia's brief cites several cases in which obligors have raised chain of title challenges (often unsuccessfully) for the proposition that Livonia has standing to assert this claim. Livonia further argues that because the statute requires the foreclosing party to hold record chain of title, a debtor must be able to challenge the record chain of title as a means of avoiding foreclosure. Livonia is correct that a party subject to foreclosure has standing to challenge whether a lender holds record chain of title, but that determination is limited to an examination of the public records. In its opinion on Livonia's motion to reconsider, the district court clarified this difference, pointing out that Livonia "acknowledges that a record chain of title exists" but is "unsatisfied with the record chain of title." 717 F.Supp.2d at 746. Because Livonia finds no claim in the public records, it is seeking to "go beyond the statutory requirements to inspect each and every aspect of every contract or agreement" in the history of the loan. Id. at 743.

Livonia Prop. Holdings, 399 F. App'x at 101-103.

Here, Plaintiffs allege no facts tending to show that the assignment is void. Furthermore, none of the facts alleged indicate that the assignment may subject Plaintiffs to a risk of having to pay their mortgage twice. In fact, Plaintiffs' complaint alleges that the assignor of the mortgage, American, went out of business in 2008 and ceased to exist as a corporate entity. Am. Compl. ¶ 16 (Dkt. 9). Given that the assignor does not exist, Plaintiffs are not at any risk of paying the same claim twice, and have never alleged that they are at risk of such double payment. Furthermore, as Defendants argue, Plaintiffs' claim that using foreclosure counsel requires a power of attorney to be recorded is not supported by any case law or relevant statute; instead Plaintiffs cite a statute (Mich. Comp. L. § 565.102) that does not reference powers of attorney.

Additionally, although Plaintiffs have standing to challenge whether Defendants held record chain of title, under Livonia Prop. Holdings this challenge is limited to an examination of the public record. Here, Plaintiffs' amended complaint alleges that the assignment was

11

"recorded in the offices of the Wayne County Register of Deeds on October 17, 2003, in Liber 39311, Page 99, Wayne County Records." Am. Compl. ¶ 46 (Dkt. 9); see also Recorded Assignment of Mortgage, Ex. B. to Am. Compl. (Dkt. 9-1 at 22 of 29 (CMECF pagination)). Because the record chain of title would not be disturbed even if the assignment were invalid, Plaintiff's challenge to the assignment on the grounds that it destroys the required chain of title lacks merit.

In their response, Plaintiffs rely on Lansing Schools for the proposition that they have standing to challenge the assignment due to a special injury or right or a substantial interest different from the citizenry at large. Resp. at 8 (Dkt. 15). However, as Defendants point out (Def. Rep. at 1-2 (Dkt. 16)), the effect of this case on Michigan standing doctrine was to overrule a prior decision (Lee v. Macomb Co. Bd. of Comm'rs, 464 Mich. 726 (Mich. 2001)) and to reinstate the "limited, prudential approach" to Michigan standing. Lansing Schools, 487 Mich. at 353. Lansing Schools does not affect the holding of Livonia Properties, because the latter case's standing analysis relied on Michigan cases predating Lee that were not affected by the Lansing Schools opinion. Furthermore, Lansing Schools did not discuss assignments, mortgages, or loans, and thus is of no relevance regarding the issue of whether a debtor may challenge an assignment to which it was not a party. The other cases cited by Plaintiffs are also inapposite.[3]

---

[3] The other cases cited by Plaintiffs do not support their arguments on standing:

- Davenport v. HSBC Bank USA, 739 N.W.2d 383, 384-385 (Mich. 2007): The court held that where defendant did not own the mortgage and was not the record holder of the mortgage, it did not have the right to foreclose. The court concluded that the defendant's failure to fulfill the statutory notice requirements rendered the foreclosure sale void. Id. at 385. The court did not discuss the standing issue in the present case, i.e. whether, and under what circumstances, a mortgagor has standing to challenge an assignment of the mortgage. In any case, the Michigan Supreme Court abrogated Davenport. Kim v. JPMorgan Chase Bank, N.A., __ N.W.2d__, No. 144690, 2012 WL 6858059 (Mich. Dec.

Because the Court concludes that Plaintiffs do not have standing to challenge the mortgage assignment on the grounds alleged in the complaint, the Court does not reach the merits of those claims. Count I of the complaint is dismissed for lack of standing and failure to state a claim on which relief can be granted.

### D.  Challenges Based on Loan Modification

Plaintiffs bring two counts under Michigan statutes relating to loan modifications. First, in Count 2, Plaintiffs claim that because they qualified for loan modification and because Defendants refused to grant such modification, Defendants may not commence foreclosure by advertisement under Mich. Comp. L. § 600.3204(4)(f) and Mich. Comp. L. § 600.3205c(7). Compl. ¶¶ 64-67 (Dkt. 9). Plaintiffs seek to convert the pending foreclosure proceedings to a judicial foreclosure. Id. ¶ 70. Second, in Count 3, Plaintiffs claim that Defendants violated

---

21, 2012) ("Davenport's holding was contrary to the established precedent of this Court. We have long held that defective mortgage foreclosures are voidable.").

- Kim v. JPMorgan Chase Bank, 813 N.W.2d 778, 783 (Mich. Ct. App. 2012): The court concluded that a defendant who did not record its mortgage interest before the sheriff's sale was not entitled to foreclose; this holding is not applicable to the instant case, because the amended complaint alleges that Citimortgage recorded the assignment of the mortgage. Am. Compl. ¶ 46 (Dkt. 9).

- Klein v. Miller, 172 N.W. 393, 395-396 (Mich. 1919): The court upheld a challenge to a fraudulent deed designed to produce double recovery. This case is distinguishable because, in the instant case, there is no threat or possibility of double recovery.

- Dohm v. Haskin, 50 N.W. 108 (Mich. 1891): The court discussed a prior version of the Michigan mortgage statute, holding that foreclosure was void due to a recording defect in the chain of title based on non-compliance with the statute. The case is distinguishable because, as discussed above, a challenge to the validity of a properly recorded assignment does not create a defect in the record chain of title.

- Smith v. Werkheiser, 115 N.W. 964, 965-966 (Mich. 1908): The court concluded that the plaintiff was entitled to equitable relief when the defendant induced plaintiff, by fraudulent means, into taking out a mortgage. This is distinguishable because, in the instant case, there are no allegations that Plaintiffs were themselves defrauded.

- Spanos v. Edwards, 228 N.W. 765, 766 (Mich. 1930): The court concluded that the plaintiff could elect to bring an action in either law or equity to challenge his own assignment of a mortgage on grounds of fraud. This case is distinguishable because in the instant case, Plaintiffs are not assignors of the mortgage contract.

13

Mich. Comp. L. § 600.3205a(1)(c) by failing to designate any person authorized to enter into loan modification agreements, because only the Unknown Trustee had authority to enter into loan modification negotiations.   Id. ¶ 73-75.

Defendants argue that Plaintiffs fail to state a claim based upon the Michigan loan modification statutes.  Def. Br. at 9 (Dkt. 11).  Defendants argue that these statutes do not require a lender to modify a loan, but instead only require a lender to consider a borrower for a loan modification before commencing foreclosure by advertisement.  Id.  Defendants argue that the only relief offered under these statutes provides borrowers the opportunity to request judicial foreclosure if the foreclosing entity does not comply with the loan modification requirements. Id.  Defendants then contend that Plaintiffs have failed to plead facts sufficient to show that the foreclosure should be converted to a judicial foreclosure, because Plaintiffs have not offered any facts that show they qualified for loan modification.  Id. at 10.  Finally, Defendants argue that Plaintiffs' claim that a foreclosing law firm may not be appointed with the authority to discuss loan modifications fails to state a claim, because the relevant statutes are silent regarding any restrictions on which agents may be appointed.  Id. at 11.

Plaintiffs argue in response that they have pled sufficient facts to state a claim for conversion of the foreclosure proceedings into a judicial foreclosure.  Pl. Resp. at 14 (Dkt. 15). Plaintiffs argue that the following facts, pled in their complaint, state a claim for conversion to a judicial foreclosure: (i) Plaintiffs qualified for a modification under the Home Affordable Modification Program ("HAMP") because Plaintiffs' total housing debt was more than 31% of their combined gross income (Compl. ¶ 28);[4] (ii) Plaintiffs had a monthly surplus of about $200,

---

[4] Eligibility requirements to participate in HAMP include: (i) the homeowner obtained the mortgage before 2009; (ii) the homeowner owes up to $729,750 on a primary residence; and (iii)

which qualified them for a traditional or in-house modification (id. ¶ 29); and CitiMortgage reduced Plaintiffs' regular monthly expenses by about $500 in order to increase Plaintiffs' monthly surplus to an amount that would disqualify them from loan modification (id. ¶¶ 30-31). Pl. Resp. at 14-15 (Dkt. 15).  Finally, Plaintiffs argue in a footnote that the foreclosing law firm has no authority to engage in loan modification discussions, because only the Unknown Trustee, as owner of the loan, has that authority.  Id. at 15 n. 13.

The statute at issue in Count 2 is Mich. Comp. L. § 600.3204(4)(g).  It states:

A party shall not commence [foreclosure by advertisement] proceedings under this chapter . . . if 1 or more of the following apply:
. . . .
(g) Calculations under section 3205c(1) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7).

Subsection (4) "applies only to proceedings under this chapter in which the first notice under section 3208 is published after July 5, 2009 and before June 30, 2013.  Mich. Comp. L. § 600.3204(5).  Furthermore, Mich. Comp. L. § 600.3205c was repealed effective December 31, 2012.  Mich. Comp. L. § 600.3205e.  However, because the foreclosure notice was published and mailed to Plaintiffs in August 2011, subsection (4) (and, by reference, section 3205c) are applicable to the instant proceedings.

Subsection (7) of Mich. Comp. L. § 600.3205c states:

If the determination under subsection (1) is that the borrower is eligible for a modification, the mortgage holder or mortgage servicer may proceed to foreclose the mortgage under this chapter if both of the following apply:

---

the homeowner has a financial hardship and is delinquent or in danger of being delinquent. HAMP Eligibility Guidelines, available at http://www.makinghomeaffordable.gov/programs/lower-payments/Pages/hamp.aspx.   Prior to June 1, 2012, homeowners whose debt-to-income ratio was 31% or lower did not qualify for HAMP.  Id.

> (a) The person designated under section 3205a(1)(c) has in good faith offered the borrower a modification agreement prepared in accordance with the modification determination.

> (b) For reasons not related to any action or inaction of the mortgage holder or mortgage servicer, the borrower has not executed and returned the modification agreement within 14 days after the borrower received the agreement.

Subsection (1) of Mich. Comp. L. § 600.3205c states:

> If a borrower has, either directly or through a housing counselor, contacted a person designated under section 3205a(1)(c) under section 3205b but the process has not resulted in an agreement to modify the mortgage loan, the person designated under section 3205a(1)(c) shall work with the borrower to determine whether the borrower qualifies for a loan modification.

Mich. Comp. L. § 600.3205c(1).  "If a borrower wishes to participate in negotiations to attempt to work out a modification of a mortgage loan, . . . the borrower shall either contact the person designated in section 3205a(1)(c) directly or contact a housing counselor from the list provided under section 3205a."   Mich. Comp. L. § 600.3205b(1).   Mich. Comp. L. § 600.3205a(1) requires that:

> [T]he foreclosing party shall serve a written notice on the borrower that contains all of the following information: . . . .
> (b) The names, addresses, and telephone numbers of the mortgage holder, the mortgage servicer, or any agent designated by the mortgage holder or mortgage servicer.
> (c) A designation of 1 of the persons named in subdivision (b) as the person to contact and that has the authority to make agreements under sections 3205b and 3205c.

Therefore, the Michigan foreclosure modification statutes impose the following requirements: (i) the foreclosing entity must inform the borrower of a designated person with authority to make loan modification agreements, (ii) to initiate loan modification proceedings, the borrower must contact the designated person, (iii) if loan modification proceedings are initiated, the foreclosing entity or its agent must consider the borrower for loan modification, and (iv) if the borrower qualifies, an agent of the foreclosing entity must in good faith offer the

16

borrower a modification program. If the foreclosing entity does not meet these requirements, the borrower may file an action to convert the foreclosure proceedings to a judicial foreclosure. Mich. Comp. L. § 600.3205c(8).

The Court concludes that Plaintiffs have pled sufficient facts to state a claim for converting the foreclosure proceedings to a judicial foreclosure. Plaintiffs have alleged that their housing debt was more than 31% of their combined gross income, and that this qualified them for HAMP; they also alleged that their monthly net surplus of $200 qualified them for a traditional loan modification. Plaintiffs have also alleged that they initiated loan modification proceedings by working with CitiMortgage and Orlans Associates, P.C., the foreclosing law firm, on modification negotiations; and that Plaintiffs' request for a modification was denied. These facts are specific and rise above the level of conclusory allegations. If this Court accepts them as true, then CitiMortgage failed to meet its requirement of offering in good faith a loan modification program (Mich. Comp. L. § 600.3205c (7)(a)). Therefore, Plaintiffs were entitled to file for a judicial foreclosure under Mich. Comp. L. § 600.3205c(8).

The Court concludes that the allegations in Count 2 are sufficiently specific to state a claim and to put Defendants on notice of the claim. Therefore, Defendant's motion to dismiss for failure to state a claim is denied in respect to Count 2.

Regarding count 3, the Court agrees with Defendants that because Mich. Comp. L. § 600.3205a(1)(c) imposes no restrictions on who may be appointed as an agent of the foreclosing entity, Plaintiffs' claim that the foreclosing law firm is not an appropriate party to be appointed fails to state a claim. Furthermore, to the extent that Plaintiffs argue that Unknown Trustee and not CitiMortgage has the authority to foreclose on the mortgage, the Court has already rejected

17

this argument based on CitiMortgage's position as loan servicer, which grants it the authority to foreclose.

Therefore, Count 3 of Plaintiffs' complaint is dismissed for failure to state a claim on which relief may be granted.

### E.  Challenge Based on Unclean Hands

In Count 4, Plaintiffs claim that Defendants are barred from seeking a foreclosure due to their unclean hands.  Defendants argue that this doctrine does not provide a cause of action, but is instead an equitable defense.  Def. Br. at 11 (Dkt. 11).  Plaintiffs argue that their claim of unclean hands is a defense to the judicial foreclosure that, they argue, the pending foreclosure proceedings should be converted to.

The doctrine of unclean hands does not provide a cause of action.  Instead, it is a "self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief . . . ."  Stachnik v. Winkel, 230 N.W.2d 529, 532 (Mich. 1975) (citations and quotation marks omitted).  Plaintiffs' claim that the doctrine of unclean hands is a defense to the judicial foreclosure is baseless; no such proceedings for a judicial foreclosure have been commenced, so there is no current cause of action against which Plaintiffs may assert this defense.  Therefore, Count 4 of Plaintiffs' complaint is dismissed for failure to state a claim on which relief can be granted.

### F.  Claims for Breach of Contract and Implied Duty of Good Faith and Fair Dealing

Count 5 of the complaint alleges that Defendants owed Plaintiffs a duty of good faith and fair dealing because Defendants had the discretion to modify Plaintiffs' loan.  Compl. ¶¶ 94-95 (Dkt. 9).  Defendants argue that this count fails to state a claim because Plaintiffs did not allege all elements necessary to plead a breach of contract claim: (1) a contract; (2) the terms of the

contract require performance of a particular action; (3) a breach; and (4) damages.  Def. Br. at 12 (Dkt. 11) (citing Sythes Spine Co., L.P. v. Calvert, 270 F. Supp. 2d 939, 942 (E.D. Mich. 2003)). Although Defendants agree that the covenant of good faith and fair dealing can be read into a contract when a contracting party makes the manner of its performance a matter of discretion, Ferrell v. Vic Tanny Intern., Inc., 357 N.W.2d 669, 672 (Mich. 1984), Defendants argue that Plaintiffs never identify what agreements were breached or how any terms of any agreement were breached.  Def. Br. at 12 (Dkt. 11).

Plaintiffs argue that the complaint states a claim for breach of good faith and fair dealing under the note and mortgage, because Defendants had the discretion to make determinations relative to modification.  Pl. Resp. at 16-17 (Dkt. 15).  Defendants contend in reply that neither the note nor mortgage contemplate loan modifications, nor leave such tasks to the discretion of CitiMortgage.  Def. Rep. at 4 (Dkt. 16).

The Court agrees with Defendants that to the extent Count 5 attempts to plead a breach of contract claim, it fails to state a claim; Plaintiffs do not explain in their complaint which contract or agreement they are referring to, and they do not present facts regarding the other elements of a breach of contract claim.  Regarding the breach of the implied duty of good faith and fair dealing, Plaintiffs claim that "Defendants had the discretion to modify Plaintiffs' loan in accordance with HAMP and/or other loss mitigation programs," Compl. ¶ 95; however, Plaintiffs do not explain what contracts, if any, provide Defendants with this discretion.  Furthermore, the Court has reviewed the mortgage and note and, as Defendants state, those instruments are silent on the issue of loan modification.

Therefore, Plaintiffs have failed to plead sufficient facts to state a claim on which relief may be granted.  Count 5 of Plaintiff's complaint is dismissed.

**G. Claims under Federal Fair Debt Collection Practices Act (FDCPA) and the Michigan Occupational Code (MOC)**

In Count 6, Plaintiffs claim that CitiMortgage was acting as a debt collector under the meaning of the FDCPA because, since there never was a valid assignment of the mortgage to CitiMortgage, it was not attempting to collect on its own debt.  Compl. ¶ 99 (Dkt. 9).  Plaintiffs claim that Defendants violated the FDCPA by: (i) failing to give validation notice; (ii) making misrepresentations about the terms of the alleged debt; (iii) making a false threat to initiate legal action; and (iv) communicating with Plaintiffs after being notified Plaintiffs had engaged counsel.  Id. ¶ 101.  In Count 7, Plaintiffs claim that Defendants violated the MOC for (i) failing to give required validation notice; (ii) making a false threat to initiate legal action; and (iii) communicating with Plaintiffs after being notified that Plaintiffs had engaged counsel.  Id. ¶ 105.

Defendants argue that Plaintiffs fail to state a claim under the FDCPA because Plaintiffs do not support this claim with any factual allegations, and instead only list violations enumerated within the act.  Def. Br. at 13 (Dkt. 11).  Defendants further contend that mortgage servicers are not considered debt collectors under the FDCPA unless the loan was in default at the time the servicer acquired its interest in the loan.  Id.  Plaintiffs argue in response that they have pleaded sufficient facts to establish that Defendant is a debt collector under the FDCPA because it uses the mail or telephone to regularly attempt to collect delinquent consumer debt.  Pl. Resp. at 17 (Dkt. 15).  Plaintiffs also point to a letter Defendants sent them that, Plaintiffs allege, misrepresents several key elements regarding Plaintiff's eligibility for a loan modification.  Ex. D to Compl. (Dkt. 9-1 at 27 of 29 (CMECF pagination)).

Under the FDCPA, liability is limited to debt collectors, which are defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect,

20

directly or indirectly, debts owed or due or asserted to be owed or due another . . . ." 15 U.S.C. §

1692a(6).  A "debt collector" does not include a party who attempts to collect its own debt.  See

Montgomery v. Huntington Bank, 346 F.3d 693, 698-699 (6th Cir. 2003).   Furthermore, a

mortgage servicer is not considered a debt collector under the FDCPA unless the loan was in

default at the time it acquired its interest in the loan.  Glazer v. Chase Home Finance, LLC, __

F.3d__, 2013 WL 141699, at *2 (6th Cir. 2013); King v. Ocwen, No. 07-11359, 2009 WL

724062, at *4 (E.D. Mich. Mar. 18, 2009).

The Court concludes that Plaintiffs have failed to establish that CitiMortgage is a "debt

collector" under the meaning of the FDCPA.   Any interest in the loan that CitiMortgage

possesses was received in 2005, when CitiMortgage merged with CitiFinancial.  The complaint

alleges that Plaintiffs began suffering economic hardships in 2009, and contacted CitiMortgage

then to request a loan modification.  Compl. ¶ 23 (Dkt. 9).  It was not until 2011 that foreclosure

proceedings were commenced against Plaintiffs.  Id. ¶ 25.  Therefore, because the loan was not

in default when CitiMortgage acquired its interest in the loan, CitiMortgage is not subject to

liability as a debt collector under the FDCPA.

Therefore, Count 6 is dismissed for failure to state a claim upon which relief may be

granted.

Count 7 alleges that Defendants violated the Michigan Occupation Code (Mich. Comp.

L. § 339.918).  Compl. ¶ 104.  The Court concludes that this claim fails because the MOC does

not apply to "a person whose collection activities are confined and are directly related to the

operation of a business other than that of a collection agency . . . ."  Mich. Comp. L. §

339.901(b).  Plaintiffs have not alleged that CitiMortgage is not a collection agency; nor have

they pleaded any facts to that effect.  Therefore, Count 7 must be dismissed for failure to state a claim on which relief may be granted.

### H. Accounting

In Count 8, Plaintiffs claim that Defendants owe Plaintiffs the obligation to account for all payments made by Plaintiffs because Defendants accepted payments from Plaintiffs while still conducting foreclosure proceedings against them.  Compl. ¶¶ 108-109.  Defendants contend that an accounting is not appropriate where the action is for a sum due under a contract.  Def. Br. at 15 (citing Boyd v. Nelson Credit Ctrs., Inc., 348 N.W.2d 25, 27 (Mich. Ct. App. 1984)).  Defendants also cite Barkho v. Homecomings Financial, LLC, 657 F. Supp. 2d 857, 865 (E.D. Mich. 2009), for the proposition that an accounting is not appropriate in cases concerning amounts due under a note or mortgage.  Plaintiffs, in response, argue that an accounting is necessary to determine the correct amount of mortgage payments due in order to avoid foreclosure.  Pl. Resp. at 20 (Dkt. 15).

The Court concludes that Count 8 is moot, for the following reasons.  Plaintiffs' remaining count, Count 2, seeks to convert the instant action to a judicial foreclosure.  As part of the judicial foreclosure process, the court determines how much is owed on the debt and enters a judgment of foreclosure and sale.  See Mich. Comp. L. § 600.3120 (court determines judgment of sale); Mich. Comp. L. § 600.3150 (court determines personal liability for mortgage debt). Therefore, the information Plaintiffs seek through an accounting would be provided to them as part of the judicial foreclosure process.  For this reason, Count 8 is denied as moot.

### IV.    Conclusion

For the reasons stated above, Defendants' Motion to Dismiss (Dkt. 11) is granted in part and denied in part.  The following counts of the complaint are dismissed: 1, 3, 4, 5, 6, 7, and 8.

SO ORDERED.

Dated:  February 11, 2013                    s/Mark A. Goldsmith
        Flint, Michigan                      MARK A. GOLDSMITH
                                             United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 11, 2013.

                                             s/Deborah J. Goltz
                                             DEBORAH J. GOLTZ
                                             Case Manager